FOR THE EASTERN DISTRICT OF PENNSYLVANIA

United States of America

v.

Khalif Sears

CASE NO. 2:20-CR-00417-003

## Motion to withdraw UNKNOWING and involuntary Guilty Plea and to remove Counsel Due to ineffective Assistance.

It is well established that the third circuit construe's Pro-se filings liberally, holding them to less stringent standards than formal pleadings drafted by lawyers. HAINES V. KERNER, 404 u.s. 519, 520 92 S.Ct. 594, 30 L.Ed 2d 652 (1972); Also United States v. Miller, 197 F.3d 644 (3rd cir. 1999). Petitioner humbly requests this Honorable Court to apply all Pro-se considerations to the instant motion.

Plea agreements are the American Justice system and negotiating a plea is critical. As more and more people "plead out," plea agreements and the federal statutes and rules governing them have become more complicated. These facts cannot be seriously argued against, not when well over 90 percent of all federal cases are resolved by a plea agreement. Defendants have a Constitutional right to effective Counsel. (U.S. Dept. of Justice, Sourcebook of criminal Justice statistics - 2001 tbl.5-22 (2002). This 95% figure is the result of a gradual increase through-out the 1990's. In 1990 about 86.5% of federal convictions resulted from plea's of guilty or Nolo Contendere. That figure than rose every year through 1999, when it leveled off at the 95% figure). Where such an extreme amount of convictions come by way of plea agreements, negotiations of said plea agreements is critical, and effective Counsel a necessity.

The Supreme Court has opined, "There is little dispute that the role of defense Counsel is of critical importance" - in other words; Defense lawyers "are necessities, Not Luxuries." At every stage, the adjudication process is calibrated (whether successfully or not) both to reduce the risk of wrongful convictions of innocents and to assure Due Process for all. Yet, that statutory and Constitutional calibration, be it regarding discovery, plea bargaining, the trial itself or most any other stage - is conducted with the assumption that the defendant will have a competent attorney representing his interests. Because of this assumption of competent counsel in the adjudication process, it is no exaggeration to state that the very legitimacy of the American Criminal Justice system depends on the participation of competent ethical defense lawyers who diligently represent

(1)

these clients best interests.

"A defendant does not have an absolute right to withdraw a guilty plea." United States v. Ellis, 470 F.3d 275, 281 (6 cir. 2006)(citations omitted). Federal Rule of Criminal Procedure 11(d) provides the standard for withdrawal of a guilty plea:

A defendant may withdraw a plea of guilty or Nolo Contenders;

(1) Before the Court accepts the plea, for any reason or no reason; or

(2) After the Court accepts the plea, but before it imposes sentence if:

(A) The Court rejects a plea agreement under Rule 11(c)(5); or

(B) the defendant can show a fair and just reason for requesting the withdrawal. In this case, the Court has already accepted defendants guilty plea and the plea agreement is not a Rule 11(c)(5) agreement; therefore, the defendant must show a "fair and just reason" in order to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B). This Rule is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant "to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty" United States v. Alexander, 948 F.2d 1002, 1004 (6th cir. 1991)(2008 U.S. Dist. LEXIS 9) cert. denied, 502 U.S. 1117, 112 S.Ct. 1231, 117 L.Ed. 2d 465 (1992)(citation omitted)

The defendant carries the burden of proving that withdrawal of his guilty plea is justified, and the matter is left to the discretion of the district Court. Id at 1003 (citation omitted). In United States v. Bashara, the sixth circuit gave a non-exclusive list of factors which should guide a district Court in determining whether to allow a defendant to withdraw his guilty plea:(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence or absence of a valid reason for the failure to move for withdrawal earlier in the proceeding; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has prior criminal experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted. 27 F.3d 1174, 1181 (6th cir 1994), cert. denied, 514 U.S. 1032, 514 U.S. 1033, 115 S.Ct. 1395, 131 L.Ed. 2d 245 (1995), Superseded by statute on other grounds, U.S.S.G. 3B1.1 (cited and applied in Ellis, 470 F.3d at 281; see also United States v. Valdez, 362 F.3d 903, 912 (6th cir 2004). The first six factors are used to determine whether defendant has presented a fair and just reason for

withdrawal and the Court balances that with the last factor -- any prejudice to the government. Alexander, 948 F.3d at 1004. Although the Bashara and Alexander courts were operating under the then controlling Federal Rule of Criminal Procedure 32(e), the same factors and rationale are still applicable to the analysis of withdrawing a guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B). See, e.g., Ellis, 470 F.3d 275, 281; Valdez, 362 F.3d at 912.

It is essential to determine whether the procedures used to obtain guilty pleas adequately ensure that defendants waive their Constitutional rights voluntarily and knowingly rather than as a result of coercion or ignorance. The defendant must rely on his attorney to represent him in all plea negotiations and to advise him whether to plead guilty. It is essential, therefore, to make sure that he receives his Constitutional right to effective assistance of counsel in the plea process.

It's the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts. The advice counsel gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. In other words, if the quality of counsels service falls below a certain minimum level, the clients guilty plea cannot be knowing and voluntary because it will not represent an informed choice.

When examining the voluntariness of a plea, the reviewing Court asks whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. The two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. Where a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. In addition, the defendant must show that counsels ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's error's, he would not have pleaded guilty and would have insisted on going to trial.

Ms. Snyder's erroneous advice regarding Defendant Sears guilty plea constitutes deficient performance. It would have been better for the defendant if counsel had not giving any advice, rather then the erroneous advice she did give on multiple issue's. Defendant Sears only pled guilty because of Counsels advice, which turns out, ~~that~~ most of which, was factually incorrect. Counsels error's are due to the fact that she did not understand Federal laws and

enhancements. Ms. Snyder failed to understand the mandatory minimum scheme attached to specific crimes, she erroneously advised her client he has 35 years mandatory, she advised him to sign a guilty plea and the government would not CHARGE him with first degree murder as it applied to Sgt. O'Connor. This advice, while sounding like a wind-fall, is very detrimental to defendant SEARS. while repeatedly informing the defendant that the government will dismiss Count 26, charging murder in aid of RACKETEERING, and aiding and abetting in violation of 18 U.S.C. 1959 (A)(1) and (2) (see Gov. change of PLEA MEMORANDUM; see also Guilty plea Agreement), counsel NEVER told defendant about ENHANCEMENTS for Sgt. O'Connor.

Under the advice of counsel the Defendant signed the plea agreement, thereby, he unknowingly and involuntarily condemning himself to a 35 year minimum mandatory (although it was his Attorney's defective advice which actually triggered his signing of the plea). It's important to note that the defendant was determined to go to trial, in fact, he went to his preliminary hearing on November 18, 2020. After hearing all evidence The Honorable Judge DeLeon ruled, "As far as Sears The Murder of Sergeant O'Connor is discharged. That's 788A Lack of evidence." The defendant has always maintained his innocence with regard to the Sgt. O'Connor murder (among other charge's he staunchly denied).

Both, "defendant's guilty plea" and "Governments change of Plea Memorandum" tell the defendant multiple times that the government will Dismiss count 26. However, Never, in either document did the government inform the defendant that, although that charge would be dismissed he would still be Enhanced for it. The government used unethical methods to ensure the defendant believed that count 26 would completely be dismissed if he signed the guilty plea. The government states; (guilty plea pg2 #2):

   2. "AT THE TIME OF SENTENCING, THE Government will:
     A.) "Move to dismiss count 26"......
     B.) recommend a sentence of imprisonment consistent with paragraph 5......
     c) Comment on the evidence and circumstances of the case; Bring to the Courts Attention All facts relevant to sentencing including evidence relating to dismissed counts, if any, and to the CHARACTER And any CRIMINAL conduct of the defendant; Address the Court regarding the NATURE and SERIOUSNESS of the offense; respond factually to questions raised by the Court; Correct factual inaccuracies in the presentence report or sentencing record; and rebut any statement of facts made by or on behalf of the defendant at sentencing."

Defendant believed, due to counsel's faulty advice that if he entered a plea of guilty the O'Connor murder would become completely obsolete for sentencing, to clarify, Defendant, through advice from counsel, believed he couldn't receive any time for the O'Connor murder. Defendant's base offense level started at 19, due to the enhancement for first degree murder his base offense level went from 19 to 43. The defendant was enhanced an additional six (6) points because Sgt. O'Connor was a police officer. The defendant's sentence was enhanced by a total of 31 points for a charge his lawyer had dismissed for "lack of evidence" and informed him he didn't need to worry about THAT charge anymore. Even if the defendant was only enhanced one (1) point it is still detrimental advice to sign a defective plea due to extra time being added.

The government may try to argue the first enhancement (from 19 to 43) was for "other" overt acts. However, the government admits the enhancement is for first degree murder (P.S.I. p36 No.161), and they would be able to prove the elements if they are forced to go to trial. The government may try to use the murder of Mr. Tyree as the nexus for the enhancement for first degree murder, an enhancement that carries LIFE. There are numerous reasons why the Tyree murder cannot be the nexus: 1.) Defendant was a juvenile when that murder was committed; 2.) The F.B.I. did not adopt that case; 3.) That charge was also to be dismissed in the state when the defendant plead out in the feds; 4.) The defendant is not guilty of those charges and therefore there cannot be evidence of defendant's guilt.

Defendant Sears would not have plead to, nor accepted enhancements for those charges. the defendant stressed to counsel he would not, under any circumstances forgo trial. He demanded dismissal for his guilty plea (for the charges he was guilty of.) The fact that Ms. Snyder let her client be illegally enhanced solidifies her ineffectiveness. Defense counsel may argue she effectively negotiated a plea which removed the LIFE sentence as an option. That would be false. The defendant has maintained innocence regarding the charges relating to Mr. Tyree and Sgt. O'Connor and expressed to counsel that he would not plead guilty to either of those ~~clay~~ charges. He has maintained his stance that they be dismissed or he would take those charges to trial. Ms. Snyder informed the defendant at that time that any "deal" he received would have to include 35 years of minimum mandatorys.

The plea agreement counsel negotiated was for 35 to 50 years with 35 years of mandatory minimums. She explained if he did not accept that offer the government would seek the maximum sentences for all other charges. Counsel told her client, "If you ever want to see the light of day sign this offer or you'll get a sentence you can never finish." without the coercing threats counsel made defendant would not have signed that plea (actually counsel made threats and promises (dismissals)).

The government alleges, one of defendant's co-defendants, on the night of the O'Connor murder, while all four huddled in the bedroom waiting, made the

(5)

claim that if cops came to arrest them they would shoot it out and kill the police, or words to that effect. The pre-sentence report strongly insinuates that this statement was made in the room on Bridge street the night Sgt O'Connor was killed (see P.S.R. page 6, number 169). The record does not support the government's position.

Transcripts from the Federal Grand Jury state Bilal Mitchell told the grand jury that Hassas Elliott made a statement about killing a cop. If a statement to that effect had ever been made it would be pertinent to the investigation the Philadelphia Police did in order to charge someone with first degree murder. The fact is Bilal Mitchell started to cooperate with authorities prior to the preliminary hearing on November 18, 2020. Defendant Sears is unsure of exactly how many proffers Bilal Mitchell partook in prior to that preliminary hearing, but that was vital as it related to charging the suspects, who were present at the time Sgt O'Connor was killed, with first degree murder.

The Commonwealth would have to prove Premeditation (among other elements) to convict anyone of first degree murder. In those early proffer sessions, prior to the preliminary hearing, the Commonwealth (or whom ever was interrogating Mitchell) must have been under severe pressure to induce, as part of Mitchell's confession, information that would prove premeditation. Once Mitchell began to cooperate he would never be able to take it back or even justify it to his comrades. He could never be accepted back into the group. It's a safe assumption to say Mitchell would not have "left out" any information that would help the Commonwealth convict his co-defendants, and it is common knowledge that if a person cooperates he must tell everything he knows or it could invalidate his cooperation deal and he would receive the maximum time at sentencing. With all that at stake, Mitchell still never mentioned anyone making threats to kill police if they came to arrest them.

It's hard to imagine someone in Mitchell's position, being interrogated by the "BROTHERS" of the officer who was killed, would somehow not remember a fact, or plan, which Mitchell was allegedly part of, that the "gang" made to kill police if they came to arrest them. It's incomprehensible to believe such important and, if true, relevant information. At the preliminary hearing on November 18, 2020 the Court rejected the Commonwealth's claim, as it related to Sears, because at the time of that hearing there was no proof, there wasn't even an insinuation of a plan or pact to kill police.

The Federal Authorities adopted the case and transferred all the defendant's from the county Jail to the Philadelphia Federal Detention Centre. Ms. Snyder represented the defendant in the state proceedings and continued to do so in Federal Court when the case became Federal. Defendant Sears was indicted on a 7 count indictment on November 18, 2020 (Defendant was indicted on 6 of the 7 counts). Due to the defendant's age and the fact that that he is a first time offender he had no knowledge of the Courts or Laws, or even legal representation. Defendant assumed that state and federal Courts were the same, same goes for Laws, but his attorney lied to

him by telling him she "knew all they needed, she been doing this a long time." Defendant had no way of knowing that Ms. Snyder has had very little experience in federal Court and took her word that she "knew all they needed..."

On March 22, 2023 Defendant Sears was superseded with a 31 count indictment which included;

> "Conspiracy to participate in a Racketeering (RICO) Enterprise, in violation of 18 U.S.C. 1962(d) and 1963(a) (Count 1)."

Defense Counsel, Ms. Snyder should have withdrawn from the case once it became a federal case. Defendant was superseded in a RICO conspiracy involving the murder of a Philadelphia Police officer and Ms. Snyder, in the best interest of her client should have informed informed him of her lack of experience in the federal system and especially that she had no RICO experience. In the interest of her client she should have withdrew, or at the very least petitioned the Court for a lawyer with RICO experience to assist her as second chair which may have eliminated a lot, if not all of these issue's which violated Defendant Sears Constitutional rights.

The government claims this conspiracy involved an agreement to kill police if they came to arrest them. On December 2, 2018 Elliott posted rap lyrics on Mitchell's instagram which state...."If I catch an opp, I'm gonna kill em." That posting was in 2018 and it was a young man rapping (Gangsta rap) using someone else's lyrics (If you look on instagram, TikTok, youtube, etc... you will see millions of people just like Mr. Elliott rapping for the audience. If a white man was singing, "I shot the sheriff, but I did not shoot the deputy... and years later his friend shot a cop, would it constitute a RICO conspiracy?). The P.S.I. used word play and trickery to make it appear that Elliott made that statement in the bedroom in the presence of his three co-defendants, on the same day as Sgt. O'Connor's murder, they also claim these rap lyric's are/were made up by Elliott. The P.S.I. state's the following:

> "the day before Kaseem Rogers murder, D.S., a 4500 Tackawanna member and later victim of the shooting, sent Mitchell a direct message on Instagram making fun of one of Elliott's original rap songs(originally posted to Bilal Mitchells Instagram story, tagging another account, "sg-haz")... (see P.S.I. pg16 #58).

The P.S.I. makes it sound as though Elliott made those lyrics up and they are a statement of fact. Someone else made those lyrics up (it is provable, but unfortunately not from F.D.C. Phila.). Furthermore, The P.S.I. makes it appear Elliott said those words the night of the O'Connor murder;

> "On March 13, 2020, Elliott shot and killed PPD Sgt O'Connor who was attempting to serve an arrest warrant at 1408 *

(6)

Bridge Street. Elliott was aware that there was an outstanding warrant for his arrest, made several comments to his coconspirators, including Sears, that he would shoot police, and was aware of police presence (they announced such) on the day of the shooting. Sears was present at the time the search warrant was executed and during the murder of Sgt. O'Connor....(see P.S.I. pg 36 #169).

Once again, the P.S.I. makes it appear Elliott told his codefendants, multiple times, that he was going to kill police. For the sake of this Argument, Hypothetically speaking, had Elliott really did make such a statement (which he did not) in the bedroom on the day of the murder, Defendant Sears was sleeping in the bed and would not have heard the statement, so there still could not be any prior knowledge attributed to him.

If there was some "pact" or "agreement" between this group, if they "planned" to kill a police officer rather then be arrested there could never be any hope of a future for this alleged gang. However, the fact that there were arrest's of these people, during the time period from 2018 up until 2020 Mitchell was arrested three times and never once did he attempt to "shoot it out." Each and every time he was arrested he put his hands behind his back and as timidly as he could allowed himself to be cuffed and arrested by the cops, cops who the government insists he, along with the other's, planned to shoot and kill. (The defendant has no direct proof and therefore will not make a direct accusation, but asks the Court to take note that throughout all of Mitchells proffers he never mentions this until the F.B.I. questioned him. Defendant would like the audio recordings of these interviews).

If this "VIOLENT, SAVAGE GANG" truely conspired and planned to kill police officers and not let themselves be arrested and Mitchell, who was one of the gangs upper echelon, backed out of that plan for whatever reason, would there not be grave consequences?

(6 1/2)

The mandatory minimums which counsel informed the defendant he has is under contention also. The government claims, and defense counsel eagerly agreed, their are 35 years mandatory minimums. That is factually incorrect. There are only 25 years minimum mandatorys attached to the defendants case. Correspondence between the defendant and his attorney show that approximately 80 to 90 days after signing the defective plea agreement and colloquy, the defendant and his attorney were arguing about all these issue's (and others). Those correspondences also show that the defendant had been arguing with her prior to then about the same issue's (ultimately, the arguments are for the purpose of showing and proving counsels advice was deficient and her coercing to sign the plea was/is ineffective assistance of counsel. The defendant was diligently trying to figure out How the mandatorys got so high.

The defendant explained to his attorney that a "Jailhouse" lawyer told him he only had 25 years mandatory minimum, and wanted his attorney to tell him WHERE the other ten years of mandatorys came from and why his attorney would advise him to sign a plea with a whole decade of extra mandatory sentences added to it that was not suppose to be there. Counsel explained in her e-mail as follows:

> "The other years comes from the fact that your accused of being involved in a RICO, conspiracy murder and that the guidelines for that are LIFE. It's just what the government thinks you deserve based on what they thought they could prove."

The fact is there aren't any "OTHER" years mandatory. The mandatory minimum is, and always has been 25 years. Counsels advice condemned her client, not only because it was incorrect but also because the defendant would have went to trial without her wrong advice, advice which highlighted counsels lack of knowledge regarding Federal laws, enhancements, statutes and codes. Counsels ill-giving advice, born of ignorance, made it impossible for the defendant to enter that plea intelligently or voluntarily.

Defendant is Pro-se, learning as he goes. It should be noted that the BASHARA Court analysis regarding the withdrawal of a guilty plea lists seven factors used for guidence by the Court to decide whether or not there are valid grounds for requesting the withdrawal of the plea. Federal Rules of criminal Procedure 11 (d)(2)(B) govern the entry, acceptance and withdrawal of a plea agreement and guilty pleas by criminal defendants. Each Court will then determine whether or not the defendant's plea was entered knowingly, voluntary, and intelligently. These factors also guide the Court in deciding whether or not

(7)

the defendant has shown a fair and just reason for requesting the withdrawal. see <u>United States v. Brown</u>, 250 F.3d 811, 815 (3d cir 2001) see also <u>United States v. Jones</u>, 336 F.3d 245, 252 (3d cir 2003).

A Courts determination whether to permit withdrawal of a guilty plea requires consideration of the facts and circumstances of each case. <u>United States v. Artablane</u>, 868 F. Supp. 76, 77 (M.D. Pa 1994)(citing <u>United States v. Crowley</u>, 529 F.2d 1066, 1071 (3d cir 1976)). The entry of a guilty plea is a solemn act, and a defendants burden in seeking to annul his plea is "substantial." <u>United States v. King</u>, 604 F.3d 125, 139 (3d cir 2010). The Court evaluates such motions in view of three factors: 1.) whether the defendant asserts his innocence; 2.) whether the defendant offers strong reasons in support of his requested withdrawal; and 3.) whether withdrawal will prejudice the government. see <u>United States v. Wilson</u>, 429 F.3d 455, 458 (3d cir 2005)(quoting <u>Jones</u>, 336 F.3d at 252); <u>United States v. Huff</u>, 873 F.3d 709, 712 (3d cir 1989). No one factor is dispositive. see <u>United States v. Wilder</u>, 134 F. Appx 527, 528 (3d cir 2005)(nonprecedential)(citing <u>Jones</u>, 336 F.3d at 258-255). The Court must balance the factors and determine whether there is a fair and just reason to grant withdrawal. <u>id.</u>

Due Process is violated if a Judge accepts a coerced guilty plea. The Supreme Court has not fully defined "voluntariness" in the guilty plea context. However, it has stated that a guilty plea is not coerced unless it was "induced by threats (or promises to discontinue improper harassment), misrepresentation ...., or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutors business (E.G. BRIBES)" It has also repeatedly stated that the voluntariness of a plea must be assessed in view of all of the surrounding circumstances.

The Totality of the surrounding circumstances are as follows; The defendant was born on July 25, 2001. The indictment has the RICO conspiracy beginning in May of 2017 when Defendant Sears was a 15 year old <u>Child</u>. For the entire length of this conspiracy the defendant was a juvenile offender, with the small exception of eight months at the end of the conspiracy, at which point the defendant was a young (first time) offender. Defendant was sleeping when S.W.A.T executed their warrant and gunfire erupted <u>while defendant slept</u>(he was shot 4 times and almost died). when the defendant "woke" Ms. Snyder was there, at the hospital in the County Jail to help. This older, sophisticated, business women slowly built trust and eventually became Defendant Sears entire world. Defendant was very young and very impressionable (his youth is important, at that age the "mind" is most susceptible to the influences of peer pressure.). At that time, prison staff kept threatening the defendant, saying he'd "get the chair". Ms. Snyder told him, "don't worry, I'll take care of everything," And at the state level, she did, which gave her a psychological & emotional control of him.

(8)

Ms. Snyder continued to represent the defendant zealously the entire time the case was in state court. Eventually having the case for first degree murder of Sgt. O'connor dismissed for lack of evidence. To fully grasp the dynamics of "THIS" ATTORNEY-client relationship you must understand How the relationship formed, but also of great import is defendant's state of mind throughout his life.

The defendant was born in 2001. His father was an Absentee figure he seldom saw. His mother passed away from a drug overdose when he was very young, 7 years old. Defendant's family was dishonest about how she passed, which added to his deep rooted trust issues (Although he now realizes this was done to shield him from the ugliness of the truth). His stepmother filled his mothers roll and eventually became his focus of attention, earning his trust by actions. Their bond was very strong, possibly due to the hardships faced together. She protected and took care of him when he desperly needed her to.

Defense Counsels roll is extremely comparable to that of his stepmothers. It should come As no suprise their was a transferrance of rolls. with Defense Counsel being seen as a surragate step mother. She protected defendant from the "CHAIR". She took care of all his major problems. She did what she said. She did not lie to him (he believed that at the time). She slowly gained control over him, eventually being able to get him to do something simply because he believed it pleased her.

Defense Counsel knew defendant admired and trusted her and she used that psychological advantage to coerce him to sign a faulty plea, one he did not understand and was horrendously inaccurate. She knew what the defendant was not willing to plead guilty to because his claim of innocence. Defendant was blind to the trickery used to get his signature on that document. Defendant did not want to sign that plea agreement because he did not understand it. when his lawyer brought it to sign she said she couldn't stay long and the two of them only skimmed over the plea for approximately ten minutes. Counsel also said she could not leave a copy. Defendant suggested that she come back when she could explain it better because he pointed out stuff he told her were false. She became slightly forceful when it became apparent he did not plan to sign that day and she exerted her will on him, coercing him to sign. He trusted Ms. Snyder and she abused his trust by forcing him to sign a unintelligent, unknowing, involuntary plea.

Federal Rules of criminal procedure 11 allows a defendant to withdraw a guilty plea if the defendant can demonstrate a fair and just reason to do so. the third circuit lists 3 factors to guide the Court, the sixth circuit has seven factors, which are;

1) amount of time that elapsed between defendant entering the plea and the motion to withdraw it. Ms. Snyder brought defendant's plea to him in January of 2025 and only went over it for ten minutes, refused to leave a copy, but did succeed in coercing her client to sign it. On 4-24-25 the e-mail between the defendant and counsel proves that by then the defendant and Ms. Snyder had already been arguing about that plea agreement for quite some time.

To prevail on a claim of ineffective assistance of counsel, the defendant "must show that the plea "was motivated by advice received from counsel which fell short of the range of competence demanded of attorneys in criminal cases." McClurkin, 472 A.2d at 1360 (quoting Gibson v. United States, 388 A.2d 1214, 1215 N.4 (D.C. 1978)). See also Hill v. Lockhart, 474 U.S. 52 (1985) (defendant must show deficient performance and prejudice); United States v. Streater, 70 F.3d 1314, 1318-23 (D.C. Cir 1995), (where defense counsels incorrect legal advice rose to level of ineffective assistance of counsel and induced defendant's plea of guilty, the plea was involuntary and unintelligent); Gatson 535 A.2d at 898 (plea was not knowing, voluntary or intelligent where defense counsel incorrectly told client she was eligible for the addict exception; manifest injustice occurred when trial court failed to advise defendant of mandatory minimum sentence).

In Gatson a manifest injustice occurred when trial court failed to advise defendant of mandatory minimum sentence. In the instant case counsel misinformed defendant and advised him to sign a plea EXTRA 10 years of mandatorys, and defendant signed on advice from counsel. The defective plea further harmed her client by giving him a LIFE enhancement for something her client was innocent of and was NOT charged with (First degree murder of Sgt. O'Connor). There are a plethora of other defects in defendant's guilty plea.

2) THE PRESENCE OR ABSENSE OF A VALID REASON FOR THE FAILURE TO MOVE FOR WITHDRAWAL EARLIER IN THE PROCEEDINGS. Once defendant became aware of the fatal defects within the plea he immediately contacted Ms. Snyder and explained the numerous defects. He "believed" she would contact the government and work with them to fix the plea. Defendant has been diligently

Trying to have the plea "fixed" (remove all defects) or withdrawn. However, although the plea agreement proves defendant's arguments are correct, in that, Counsels advice was not only incorrect, it was severely detrimental to her client, yet, as of 8-3-25 Ms. Snyder has refused to admit error or that the plea is so fatally flawed to make it invalid, she claims to still be "gathering information."

3) <u>Whether defendant has asserted or maintained his innocence.</u> The defendant has not only asserted and maintained his innocence (in regards to specific charges) he went before the Honorable Judge Deleon in the Court of Common Pleas and was found not responsible for the murder of Sgt. O'Connor. The defendant states he was not guilty of the drug weight the govern-ment the government has inflated

4) <u>The circumstances underlying the entry of the guilty plea.</u>

A guilty plea is invalid if it is not entered knowingly, voluntarily and intelligently by the defendant. <u>United States v. Dixon</u>, 479 F.3d at 435 (citing <u>Brady v. United States</u>, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed. 2d 747 (1970). "Because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truely voluntary unless the defendant possesses an understanding of the law in relation to the facts." <u>United States v. McCreary-Redd</u>, 475 F.3d 718, 723 (6th cir 2007) (citations omitted). For a guilty plea to be valid, the district court must make sure that the defendant understands "any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11(b)(1)(H).

Misadvice of counsel may be a sufficient basis for permitting the with-drawal of a guilty plea. See <u>Brown v. Perini</u>, 718 F.2d 784, 789 (6th cir 1983). "Affir-mative misstatements of the maximum possible sentence" are sufficient to in-validate a guilty plea if the misstatements are material to defendant's dec-ision to plead guilty." <u>United States v. Dixon</u>, 479 F.3d at 435 (quoting <u>Pitts v. United States</u>, 763 F.2d 197, 201 (6th cir 1985)); see also <u>Pitts</u>, 763 F.2d at 201 (Re-citing numerous cases finding that withdrawal of defendant's plea was appro-priate in light of counsels misadvice concerning sentence exposure, both when counsel overstated and understated defendant's possible sentence).

Ms. Snyder states "no matter what" the defendant MUST do 35 years mandatory so he should take the plea of 35 to 50 years and in so doing he will receive the "low-end" and be sentenced to the mandatory 35 years. If the defendant plead to this agreement the government would agree to drop the murder in aid of racketeering to allegedly get out of the "LIFE" sentence. However, because she coerced him to plead and be "ENHANCED" for Sgt. O'Connor's murder she put the "LIFE" sentence back into play. The Defendant is not guilty and Ms. Snyder knew it. The defendant could not understand the plea agreement because Defense Counsel did not understand it and therefore could not explain it correctly.

5) **The defendants nature and background.** Defendant's intelligence, sophistication, and understanding of the plea are relevant to the Courts analysis of this factor. See ELLIS, 470 F.3d at 285, (finding that this factor supported denial of defendant's motion to withdraw plea because defendant was highly educated and sophisticated and understood what he was doing when he did enter his plea); see also UNITED STATES V. QUINLAN, 473 F.3d 273, 278 (4th cir 2007).

Defendant was/is a young offender who believed he was receiving sound legal advice from his attorney. The defendant certainly did not know Federal law and he assumed Ms. Snyder did. Her advice turned out to be egregiously erroneous, which the defendant had no way of knowing was the case.

6) **The degree to which the defendant has prior experience with the criminal justice system.**

The defendant is a first time, young offender who has never been arrested before.

7) **Potential prejudice to the government if the motion to withdraw is granted.**

The final BASHARA factor is the potential prejudice to the government if the motion to withdraw is granted. However, there are few, if any, things more prejudicial than a person loosing his liberty for a change he is not guilty of; and plead guilty to unknowingly due to Counsel's advice.

Once the federal authorities adopted the case, for one reason or another that the defendant is UNAWARE of, Ms Snyder ceased arguing "for" Defendant Sears and began arguing "with" him in her quest to have him sign a plea agreement. If the defendant claimed he did not want to admit to something because

he was, in fact, not guilty Defense Counsel would comment ....."As long as the end justify's the means and you get the sentence you want."..... or ...." There are many shades of grey."....But, Defendant Sears did not WANT a 35 year minimum mandatory, nor did Defendant Sears DESERVE a 35 year minimum mandatory as Counsel claimed was the reason for said mandatory, which, Common sense and Federal Sentencing guidelines both agree the defendant does Not DESERVE a mandatory minimum of 35 years. The United States Sentencing Guidelines were created by Congress, in an attempt, to sentence people to the time they deserve. The United States Sentencing Guidelines specify the defendants mandatory minimums are: 25 years. Defense Counsel representation fell below the standards required under STRICKLAND.

Whether intentional or not, Ms. Snyder inserted her will over the defendant by coercing him into signing that plea agreement. Courts have generally held that constitutionally competent representation requires only that the attorney inform the client of the direct consequences of the plea, which is the minimum NECESSARY for an intelligent guilty plea. A guilty plea will not be vacated on the grounds of ineffective assistance of counsel unless the defendant proves both, that Counsels representation was Constitutionally deficient and that the client was prejudiced by the deficiency, i.e. that there is a reasonable probability that, but for counsels error's she/he would not have pleaded guilty and would have insisted on going to trial.

The defendant has proven a willingness to face his accusee's in Court. The defendant has/had explained to his attorney he would not plead guilty to any charge he was not guilty of (i.e. The murder of Sgt. O'Connor; The excessive weight attributed to the drugs; The murder of Mr. Tyree; etc...). On October 13th and 14th and November 18, 2020 the defendant appeared before the Honorable Judge DeLeon in the first Judicial district of Pennsylvania in preparation for TRIAL for the murder of Sgt. O'Connor. After hear the evidence the Honorable Judge DeLeon ruled defendant Sears charges of first degree murder be dismissed for lack of evidence. Defendant explained in detail, that it is impossible, not improbable, but IMPOSSIBLE for him to have sold the amount of drugs the government set the drug weight at, nor was it even remotely reasonably foreseeable. However, Counsel still let the government set an EXCESSIVE weight for them, and Defense Counsel made no objection, thereby, ignoring her clients instructions to do so. (i.e. See P.S.I. page 13, Number 43 and 44: Here the C.I. was sent to buy a relatively small amount of drugs, especially for a group of people who the government claims are a drug distribution hub. The Alleged drug CZAR apologized to the C.I for not being able to give him the full amount of drugs he had been ASKING for).

Counsel advised the defendant that he "best accept the offer (35 to 50 years)

(13)

he would have to do the mandatory 35 years but that mandatory would NEVER change." The defendant did not want to plead guilty to charges he's is not guilty of, Counsel explained: The O'Connor murder would be dismissed, and the state would dismiss the Tyree murder also. We could argue the drug weight and from what defendant explained to Counsel, she believed it was a good argument. (At that time the defendant wasn't aware the mandatory's were wrong).

In hindsight it becomes obvious that Ms. Snyder lacked knowledge in regards to Federal Law's, rules and enhancements. Due to her incompetence, and her influance over the defendant, she was easily able to coerce him into signing that defective plea agreement, which, although did dismiss the O'Connor murder, it still allowed the government the chance to enhance him for the O'Connor murder. Accepting that was the worst possible option. He could have won at trial (like he did in state court), now he can be enhanced for something he did not do, & can't fight it.

Sixth Amendment claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 688, 104 S.Ct. 2052 80 L.Ed 2d 674 (1984), which qualifies as clearly established Federal Law, as determined by the Supreme Court of the United States. Taylor v. Horn, 504 F.3d 416; 430 (3d cir. 2007). According to Strickland, a court deciding an ineffectiveness claim must "determine whether, in light of all the circumstances, the identified acts or omissions (of counsel) were outside the wide range of professional competent assistance." 466 U.S. at 670. The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S. at 690, 104 S.Ct. 2052, 80 L.Ed. 2d 674.

Since Strickland, the United States Supreme Court and this Court have emphasized the necessity of assessing an ineffectiveness claim in light of all the circumstances. See Taylor, 504 F.3d at 430; Jacobs v. Horn, 395 F.3d 92, 107 (3d cir 2005)(citing Supreme Court and Third Circuit cases). With regard to the first prong, the Supreme Court has instructed that "the proper measure of attorney performance" is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. With regard to the second prong, a reasonable probability is one that is "sufficient to undermine confidence in the outcome." Id. at 694.

In order for a guilty plea to be valid it must meet a number of constitutional safe guards. For the defendant who pleads guilty, thereby waiving numerous Constitutional rights must not do so as a result of ignorance, incomprehension, coercion, terror [improper] inducements or subtle or blatant threats. In such circumstances a defendants waiver of Constitutional rights and hence, the guilty plea, would not be valid.

The entire manner in which Ms. Snyder represented the defendant while in federal custody was Constitutionally ineffective. While claims of ineffective are generally raised in 2255 collateral proceedings, there are circumstances, such as here, where Counsel has created a record which highlights her ineffectiveness. In the instant case the record has been sufficiently developed to examine Counsels performance. See: United States v. Zepp, 748 F.2d 125; 1984 U.S. App. LEXIS 16763

> "During the last two decades, the major jurisprudential focus has shifted from the issue of the right to counsel to the more subtle and problematic question of EFFECTIVE assistance of counsel under the 5th, 6th and 14th amendments. With difficulty and divisiveness our courts have attempted to define what constitutes deficient performance by counsel, and whether counsels errors were so serious as to deprive the defendant of a fair trial. See, e.g., STRICKLAND V. WASHINGTON, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984); Cuyler v. Sullivan, 446 U.S. 335, 344, 64 L.Ed. 2d 333, 100 S.Ct. 1708 (1980); McMann v. Richardson, 397 U.S. 759, 770-771, 25 L.Ed 2d 763, 90 S.Ct. 1441 (1970)."

Defendant's Constitutional right to effective Assistance of counsel is guaranteed at every critical stage of Trial. Plea negotiations, which make up 95 percent of all federal convictions, is critical. The ineffectiveness surrounding defendants Plea agreement deprived the defendant of his Constitutional rights. Defense Counsel failed to comprehend Defendants Plea agreement, gave incorrect advice for multiple issue's therein, and coerced her client to sign a plea. Due to the fact Counsel did not understand the plea agreement, (i.e. Mandatory minimums, enhancements, etc...) she could not give correct advice, rendering the plea Agreement unintelligent, unknowing and involuntary.

Federal Rule of criminal procedure 11(d)(2)(B) was designed "to allow a hastily entered plea, made with unsure heart and confused mind to be undone"... Defendant's Attorney's mind was "CONFUSED" (to say the least) regarding the plea agreement, thereby ensuring Defendants mind was even more confused (see: e-mails dated 4-24-25 exhibit "A"). Counsel had not "figured it out correctly" after two months of notice. Ms. Snyder was alerted within two weeks that the defendant was rushed and the plea was completely wrong, and added an extra decade of mandatory's (among other inaccuracies that are all highly prejudicial). Counsel, after two months notice to fix it still failed to grasp the actual meaning of Federal mandatory's, enhancements, etc... Counsel rushed the defendant to sign it, assuring him she understood it and it was the best he could hope for because of his minimum mandatory's, which were FALSE.

## Conclusion

WHEREFORE, FOR all the above stated reasons the defendant respectfully requests this Honorable Court to allow defendant to withdraw the defective guilty plea which violated his Constitutional rights. The violation of these rights so infected Defendants proceedings that to allow defendants plea to remain would constitute a miscarriage of Justice.

Respectfully,

_____

Khalif Sears

KS

## CERTIFICATE OF SERVICE

I, Khalif Sears, hereby swear under oath that on __10-22-25__

I sent a copy of the foregoing motion to the following, via, United States Postal Service:

THE HONORABLE Judge Sanchez
ATTN: CLERK OF COURT
UNITED STATES COURT HOUSE
601 MARKET St.
Phila. Pa. 19106

DATE: __10-22-25__

Respectfully,

_____

Khalif Sears

KS

EXHIBIT
"A"

TRULINCS 21154509 - SEARS, KHALIF - Unit: PHL-E-N

----------------------------------------------------------------------------------------------

FROM: 21154509
TO: Ape, President
SUBJECT: Marni
DATE: 04/24/2025 09:02:44 AM


hey Marni good morning , still nothing on the psi? and also they have in the plea that i have an statutory 35 years but its only 25 , 10 for the drugs , 10 for the 924 and 5 for the guns and drugs , so where does the other 10 yrs come frm ? their no other mandatory time i have

TRULINCS  21154509 - SEARS, KHALIF - Unit: PHL-E-N

--------------------------------------------------------------------------------

FROM: Ape, President
TO: 21154509
SUBJECT: marni
DATE: 04/24/2025 12:21:07 PM

The other years comes from the fact that you're accused of being involved in a Rico, conspiracy murder, and that the guidelines for that are life
It's just what the government thinks that you deserve based on what they thought they could prove

DATE: 10-22-25
CASE NO: 2:20-CR-00417-003

To: Clerk of Court,

Sir/Ma'am, How are you? Can you please make sure the enclosed motion is added to my docket. Thank you for all your time and help throughout the years, it really is greatly appreciated.

Respectfully,

Khalif Sears

# SEALS #2154-509
F.D.C.
BOX 562
PA 19105

TO: THE HONORABLE SANCHEZ

ATTN: CLERK OF COURT

U.S. COURTHOUSE

601 MARKET ST.

Phila. PA. 19106

RECEIVED
OCT 29 2025

" LEGAL MAIL"